# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MARK MURPHY,**               ) | |
|                      ) | |

**MARK MURPHY,**          )

     **Plaintiff,**        )

                        )

**v.**                        )     **No. 2:11-cv-00114**

                        )     **Judge Nixon**

**CAROLYN W. COLVIN,**     )     **Magistrate Judge Brown**

**Acting Commissioner of Social Security,**     )

                        )

     **Defendant.**       )

## ORDER

Pending before the Court is Plaintiff Mark Murphy's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 18), filed with a Brief in Support (Doc. No. 19). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition. (Doc. No. 22.) Magistrate Judge Brown subsequently issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied and the final decision of the Commissioner be affirmed. (Doc. No. 23 at 25.) Plaintiff has filed an Objection to the Report ("Objection") (Doc. No. 24), and Defendant has not filed a Response to Plaintiff's Objection. Upon review of the Report and the record, the Court **ADOPTS** the Report, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner.

## I.    BACKGROUND

### A.    *Procedural Background*

Plaintiff initially applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on July 17, 2007, stating an alleged onset date of April 1, 2001. (Tr. 130–141.) Plaintiff alleged disability due to bipolar disorder, depression, and back

1

pain. (Tr. 170.) The Social Security Administration ("SSA") denied both claims, first on March

26, 2008, and again upon reconsideration on October 23, 2008. (Tr. 67, 79, 81.) Plaintiff was

appointed counsel on October 27, 2008, and the SSA received Plaintiff's timely Request for

Hearing by an Administrative Law Judge on November 18, 2008. (Tr. 83, 87.) Administrative

Law Judge ("ALJ") Joan A. Lawrence presided over the hearing by video teleconference on

January 26, 2010, during which Plaintiff appeared with counsel and gave testimony, as did

Ernest W. Brewer, an impartial vocational expert. (Tr. 16, 37.)

ALJ Lawrence issued an unfavorable decision on March 25, 2010, making the following

enumerated findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social
   Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since
   April 1, 2001, the alleged onset date (20 CFR 404.1571 *et seq*., and
   416.971 *et seq*.).

3. The claimant has the following severe impairment: lower back pain
   (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of
   impairments that meets or medically equals one of the listed
   impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
   404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
   416.926).

5. After careful consideration of the entire record, the undersigned
   finds that the claimant has the residual functional capacity to
   perform light work as defined in 20 CFR 404.1567(b) and
   416.967(b) with no more than occasional climbing, crawling, and
   kneeling and no m ore t han m ild proble ms inte racting with others,
   understanding and remembering, and responding to changes.

6. The claimant is unable to perform any past relevant work (20
   CFR 404.1565 and 416.965).

2

7. The claimant was born on November 4, 1970 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18, 20, 27–30.)

On June 22, 2010, Plaintiff filed a request for review of the ALJ's decision. (Tr. 11.) This request was denied on October 13, 2011, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6.) Plaintiff filed this action on November 22, 2011, seeking judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). (Doc. No. 1.)

Pursuant to Judge Brown's May 3, 2012, order (Doc. No. 13), Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 18) with a supporting memorandum (Doc. No. 19) on July 10, 2012. Defendant responded on September 21, 2012 (Doc. No. 22), and Judge Brown issued his Report recommending that Plaintiff's Motion be denied on March 6, 2013 (Doc. No. 23). On March 20, 2013, Plaintiff asserted a single objection to the Report. (Doc. No. 24.) Specifically, Plaintiff objects to Judge Brown's finding that the ALJ's

3

determination that Plaintiff's mental impairment is non-severe was supported by substantial evidence. (Doc. No. 24.) The Court now reviews Judge Brown's Report, considering Plaintiff's Objection.

### B.    Factual Background

The Court adopts the facts as stated in the Report. (Doc. No. 23 at 4–12.)

## II.    STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "Substantial evidence" is a term of art and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison Co.*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)).

4

This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if a court would have come to different factual conclusions as to a plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## III. PLAINTIFF'S OBJECTION TO JUDGE BROWN'S REPORT

Plaintiff raises a single objection to Judge Brown's Report. (Doc. No. 24.) He objects to Judge Brown's finding that substantial evidence supports the ALJ's determination that Plaintiff's mental impairment is non-severe. (*Id.*) Plaintiff supports his Objection with his doctors' medical findings, most of which were included in the Report.[1] (Doc. No. 24 at 2.) In addition, Plaintiff specifically rebuts the ALJ's finding that Plaintiff's failure to mention his depressive symptoms to psychological examiner Jerell Killian is significant, arguing that Killian's examination was limited to learning disorder and cognitive problems. (*Id.* (citing Tr. 26).) Plaintiff also cites testimonial evidence from the hearing before the ALJ regarding his daily activities and difficulty "getting along" with others. (*Id.*) He further asserts difficulty concentrating and sleeping. (*Id.*) Finally, Plaintiff argues that his significantly limited ability to

---

[1] The medical evidence listed in the Objection deviated from Report's statement of the record only by the addition of the following sentence: "He showed symptoms of declining appetite, declining self-worth and self-degrading remarks." (Doc. No. 24 at 1–2.) The record supports this statement. (Tr. 247.)

5

do basic work activities, along with the vocational expert's testimony, show that it would be hard for him to meet the minimum requirements for competitive work. (*Id.* at 3.)

The SSA has developed a five-step sequential process for an ALJ to use in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a) (2013). The first step is to determine whether the claimant is engaging in "substantial gainful activity." *Id.* The second step is to determine whether the claimant has a "medically determinable impairment that is 'severe' or a combination of impairments that is 'severe'" and is expected to result in death or last for at least a year. *Id.* §§ 404.1509, 404.1520(c), 416.920(c). The severity of a claimant's impairment is evaluated by the effect the impairment has on the claimant's ability to work. *Id.* §§ 404.1521, 416.921. A claimant's impairment is "not severe" when it does not significantly limit a claimant's ability to do basic work activities. *Id.* If a claimant does not have a severe *medically determinable* impairment, then he is not disabled. *Id.* § 416.920(a)(4)(ii). Section 404.1508 requires that "a physical or mental impairment . . . be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Id.*

The third step is to determine whether the claimant's impairments meet or medically equal one of the impairments listed in the controlling SSA regulation. *Id.* Pt. 404, Subpt. P, App. 1. The ALJ uses the description of the mental impairment in question, which consists of categories labeled "A," "B," and "C," to evaluate whether the claimant has that medically determinable impairment. *Id.* § 12.00. The ALJ must first evaluate the "A" criteria, consisting of "symptoms, signs, and laboratory findings" of the claimant's alleged medically determinable mental impairment. *Id.* Then, the ALJ must evaluate the "B" criteria, which rate the claimant's

6

degree of limitation in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (temporary increases in symptoms resulting in loss of function). *Id.* If the claimant does not suffer from "marked" ("more than moderate but less than extreme") functional limitation according to the "B" criteria, the ALJ must assess the "C" criteria, which provide additional guidelines for evaluating impairment-related functional limitations that are incompatible with the ability to do any gainful activity. *Id.* A claimant is deemed to have a recognized mental impairment if his medical record satisfies the criteria of one of the enumerated mental impairments. *Id.*

The fourth and fifth steps require knowledge of a claimant's residual functional capacity: his ability to do mental and physical work on a sustained basis despite his limitations. 20 C.F.R. §§ 404.1520(a), 416.920(a). The fourth step determines a claimant's residual functional capacity to do past relevant work, and the fifth examines whether he is able to do any other relevant work. *Id.*

Here, in denying Plaintiff's claim for benefits, ALJ Lawrence found at the second and third steps that Plaintiff's mental impairments are non-severe. (Tr. 19.) She considered the four functional "B" criteria of mental disorders set out in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C), and found that Plaintiff has only mild difficulties with activities of daily living, maintaining social functioning, and maintaining concentration, and no episodes of decompensation. (Tr. 19.) The ALJ supported her findings by conducting the residual functional capacity assessment used at the fourth and fifth steps of the five-step test to determine the level of Plaintiff's ability to do other work. (Tr. 20.) Findings that Plaintiff never sought outpatient mental health treatment or required inpatient hospitalization for psychiatric problems,

7

as well as his "excellent" response to psychotropic medications and his February 2008 normal mental status examination performed by consultative psychological examiner Eugene Smith all support the ALJ's conclusion. (Tr. 24–25.) Though Mr. Smith diagnosed Plaintiff with depression and bipolar disorder, the ALJ gave this opinion minimal weight, as it was based on Plaintiff's subjective complaints despite the clinical findings that showed good mental health. (Tr. 25.)

     *A.    Medical Evidence*

Plaintiff supports his objection to Judge Brown's finding that substantial evidence supports the ALJ's finding that his impairment is non-severe using his doctors' medical findings. (Doc. No. 24 at 2.) He argues that psychiatrist Dr. Daniel Donovon suspected he may be depressed and that both treating physicians, Dr. W. G. Quarles and Dr. Vijay Patibandla, diagnosed him with depression. (Doc. No. 24 at 1–2.) He also argues that the ALJ erred in giving minimal weight to the opinion of psychological examiner Eugene Smith. (Doc. No. 19 at 12–13.) Finally, he rebuts the ALJ's finding that Plaintiff's failure to mention his depressive symptoms to psychological examiner Jerell Killian is significant. (Doc. No. 24 at 2.)

The Court finds that the ALJ's decision was supported by substantial medical evidence and weighed the physicians' opinions appropriately. In determining the weight to accord a physician's opinion, an ALJ must consider many factors, including the physician's and Plaintiff's examining relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of treatment relationship, the supportability of the physician's opinion, specialization of the physician, and other factors the claimant brings to the ALJ's attention. 20 C.F.R. § 404.1527(c). The treatment relationship determines whether a physician

8

is a treating source: a physician who has provided the claimant with medical treatment or evaluation, and who has had an ongoing treatment relationship with the claimant, seeing the claimant with a frequency consistent with accepted medical practice for the condition treated. *Id.* § 404.1502.

A treating source is given controlling weight when his opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other evidence in the record. *Id.* However, the Sixth Circuit has held that the ALJ may properly reject the opinion of a treating physician that is not sufficiently supported by medical evidence. *See, e.g., Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006). The Sixth Circuit has also held that an ALJ need give only adequate reason for rejecting the opinions of treating physicians where the physicians base their opinions solely on claimant's subjective complaints, and where the ALJ finds the opinions "inconsistent with other substantial evidence in [the] record." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Finally, the ALJ need not show any specific form of deference to consultative examiners. *See Madden v. Comm'r of Soc. Sec.*, 184 F. Supp. 2d 700, 706 (S.D. Ohio 2001).

Plaintiff first argues that Dr. Daniel Donovan's November 2, 2000, evaluations, in which he "suspected" and "felt" Plaintiff was depressed "in at least a mild to moderate fashion," support a finding of disability. (Doc. No. 24 at 1.) Plaintiff saw Dr. Donovan for migraine headaches. (Tr. 225.) Because Dr. Donovan saw Plaintiff only once, he did not have an "ongoing" relationship with Plaintiff and was therefore not a treating physician. (Tr. 224–27.) Thus, the ALJ was not bound to a specific level of deference. 20 C.F.R. § 404.1527. Dr. Donovan conducted a "neurologic examination" of Plaintiff and documented it on Plaintiff's

9

chart. (Tr. 226.) There, Dr. Donovan described Plaintiff's mental status as follows: "On neurologic examination, the mental state is clear. There is no expressive or receptive language defect. His affect is depressive, however." (*Id.*) The Court finds the objective medical evidence supports mental functionality, and only Dr. Donovan's subjective impressions of Plaintiff's "affect" support a finding of a disability. Thus, this examination does not affect the Court's finding that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments are non-severe.

Next, Plaintiff raises Mr. Smith's diagnosis of major depression and bipolar disorder to argue that his mental impairments are severe. (Doc. No. 24 at 1–2.) The Court adopts Judge Brown's reasoning that the ALJ's decision to give Mr. Smith's opinion little weight was based on substantial evidence. Clinical findings from Plaintiff's consultative examination by Mr. Smith in February 2008 show Plaintiff had a normal mental state. (Tr. 247.) Mr. Smith's examination found Plaintiff's memory, concentration, and orientation intact with no psychotic symptoms or thought-process disorders. (*Id.*) No clinical tests show evidence of depression, and the ALJ is entitled to determine how the evidence is weighed. (Doc. No. 23 at 21.) Further, Mr. Smith's findings do not bind the ALJ, as Mr. Smith is a psychological consultant. *See Madden*, 184 F. Supp. 2d at 706. The feelings of hopelessness and worthlessness Plaintiff raises in his Objection were "reported" by Plaintiff himself, and thus, are not considered medical evidence beyond statement of symptoms. (*Id.*)

Plaintiff also argues his prescriptions of Zoloft from both treating physicians, Dr. Quarles and Dr. Patibandla, show that his mental impairment is severe. (Doc. No. 24 at 2.) While the Court does not dispute the doctors' status as treating physicians, this status alone does not entitle

10

their prescriptions to be conclusive of the severity of Plaintiff's disability, nor does it entitle their opinions to controlling weight. 20 C.F.R. § 404.1502. As Judge Brown found, Plaintiff reported on his second visit to Dr. Quarles in December 2000 (one month after the first) that his depression was "much improved" on Zoloft, and that it was "somewhat better" still in February 2001. (Tr. 315.) This indication that medication can manage Plaintiff's depression is substantial evidence for the ALJ's finding that his mental impairment is non-severe. (Tr. 317–330.) Dr. Patibandla did not dispute that Plaintiff's depression can be managed well with medication. (*Id.*) Plaintiff was still taking Zoloft at the time of his hearing with the ALJ. (Tr. 45.)

Finally, Plaintiff attempts to rebut the ALJ's reliance on the fact that Plaintiff failed to mention his depression to psychological examiner Dr. Killian during a 2009 psychological examination. (Doc. No. 24 at 2 (citing Tr. 26).) Plaintiff argues that Dr. Killian was treating him for a learning disorder and cognitive problems only. (*Id.*) However, the ALJ supported her finding based on the rationale that a patient experiencing severe depressive symptoms would mention them in a psychological examination. (Tr. 26.) The ALJ also gave little weight to Dr. Killian's opinion that Plaintiff has "borderline" intellectual functioning based on other evidence in the record, such as Plaintiff's high school diploma, consistent work history (including skilled labor), and Mr. Smith's contrary opinion. (*Id.*) Dr. Killian's "functional assessment" of Plaintiff was that he is "capable of performing some activities requiring assessment and problem solving but generally [is] restricted to unskilled, physical work." (Tr. 367.) Thus, the Court finds the medical evidence in the record sufficient to support the ALJ's finding that Plaintiff's mental impairment is non-severe.

B.    *Testimonial Evidence*

11

Plaintiff next supports his objection using testimonial evidence from his hearing. (Doc. No. 24 at 2–3.) He describes difficulty "getting along" with others, concentrating, and sleeping. (*Id.*) Finally, he argues that the vocational expert's testimony supports his inability to meet the minimum requirements for competitive work. (*Id.* at 3.)

The Court finds that the testimonial evidence used to support Plaintiff's Objection does not alter the finding that substantial evidence supports the ALJ's denial of benefits. In assessing a claimant's testimony, although an ALJ may not ignore a claimant's statements, his finding regarding the credibility of a claimant's testimony is entitled to great deference. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990). However, an ALJ's credibility finding must be supported by substantial evidence from the record. *See Townsend v. Sec'y of Health & Human Servs.*, 762 F.2d 40, 44 (6th Cir. 1985). Furthermore, the testimony of a vocational expert can support a finding that a claimant can perform a significant number of jobs, despite an inability to perform even a wide range of sedentary work. *See Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990). However, a vocational expert's answer to a hypothetical question is reliable only if substantial evidence supports the assumptions included in the hypothetical question. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Finally, if an ALJ finds that there is conflicting substantial evidence, she may make the decision as to the ultimate result, as long as her decision is supported by substantial evidence. *See Madden*, 184 F. Supp. 2d at 706.

Here, in evaluating Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms, the ALJ found his testimony not credible because it conflicted with the residual functional capacity assessment that showed he has only mild mental difficulties. (Tr.

12

22, 26.) ALJ Lawrence supported this assessment with evidence that Plaintiff did not seek or receive mental health treatment beyond medication. (Tr 24–25.) Plaintiff also responded "excellent[ly]" to Zoloft, and his February 2008 mental status examination was normal. (*Id.*) In addition, Judge Brown found Plaintiff's testimony undermined by his refusal to seek the outpatient mental health treatment or psychiatric inpatient hospitalization he allegedly requires. (Doc. No. 23 at 22.)

Plaintiff now objects that the record shows he has "trouble reasoning" and had problems "getting along" with another employee in his former workplace. (Doc. No. 24 at 2.) However, the Court finds Plaintiff mischaracterizes the facts. In his hearing, Plaintiff testified that he "[doesn't] reason with no one," which the Court reads to support his claim that he has difficulty cooperating with others. (Tr. 44.) Plaintiff's mental status examination in February 2008 showed Plaintiff alert, oriented (to time, place, person, and circumstance), able to maintain concentration, and displaying a logical thought process. (Tr. 247.) Plaintiff was also cooperative and denied any suicidal or homicidal thoughts. (Tr. 25.) This is substantial evidence that the claimant doesn't have trouble reasoning overall. (*Id.*) Also, while Plaintiff admits that Zoloft improves his condition, he claims it does not help him get along with others. (Tr. 44.) However, during his hearing with the ALJ, Plaintiff could not identify anything in particular that upsets him, and he admitted that he had not sought additional help to improve his relationships with others. (*Id.*) Furthermore, when Plaintiff's attorney asked him why he no longer attends church during his ALJ hearing, he testified that his difficulty getting along with others did not prevent him from enjoying church. (Tr. 55.) Rather, Plaintiff cited his inability to sit for long periods of time as the reason for his absence from church. (*Id.*) Thus, substantial evidence supported the ALJ's finding that Plaintiff's mental difficulties could be well-managed with drugs and were not

13

severe enough to compel him to seek additional treatment. (Tr. 24–26.) As there is evidence on both sides, the ALJ did not err in finding Plaintiff's mental impairments non-severe. *See Madden*, 184 F. Supp. 2d at 706.

Plaintiff cites his testimony describing his difficulty sleeping, concentrating and grocery shopping to support the severity of his mental impairment. (Doc. No. 24 at 2–3.) He raises the opinions of Dr. Quarles, Dr. Patibandla, and Mr. Smith again in support. (*Id.*) While Dr. Quarles and Dr. Patibandla prescribed Plaintiff Zoloft, this prescription does not prove Plaintiff's mental impairments severe, as discussed above. (Tr. 317–330.) Again, the ALJ found Plaintiff's testimony not entirely credible, because it was inconsistent with his residual functional capacity assessment. (Tr. 22.) The ALJ found Plaintiff to have only mild problems interacting with others, understanding, and remembering and responding to changes. (Tr. 26.) Further, Plaintiff had no difficulty concentrating, according to Mr. Smith. (Tr. 247.) In addition, the ALJ found Plaintiff able to care for his personal needs and reasoned he should be able to perform daily activities. (Tr. 23.) Substantial evidence referred to above supports the ALJ's finding, as Plaintiff has a high school diploma and "fairly strong" work history. (Tr. 26.)

Finally, Plaintiff argues that the vocational expert testified that *if* Plaintiff had marked or severe problems dealing with people, then it would be hard for him to find competitive work. (Doc. No. 24 at 3 (emphasis added).) However, because substantial evidence of Plaintiff's mental health and functional capacity supported a finding that Plaintiff does not have a severe mental impairment, the ALJ was not required to rely on the vocational expert's answer to her hypothetical question. *See Felisky*, 35 F.3d at 1036. Therefore, the Court finds the ALJ's finding that Plaintiff's mental impairments were non-severe is supported by substantial evidence.

14

## IV.    CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Report, **DENIES** Plaintiff's

Motion, and **AFFIRMS** the decision of the Commissioner.  This Order terminates this Court's

jurisdiction over the above-styled action, and the case is **DISMISSED.**

It is so ORDERED.

Entered this the ___$5^t$___ of August, 2013.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

15